**SO ORDERED.**

**SIGNED this 11 day of January, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

WENDY EDITH DICKERSON,                         CASE NO. 11-05769-8-JRL

    DEBTOR.                                              CHAPTER 7

### ORDER

This matter came before the court on the trustee's motion to compel and approve compromise and the debtor's motions to remove trustee.[1] A hearing was held on December 20, 2011 in Raleigh, North Carolina to consider the motions.

### BACKGROUND

The pro se debtor filed for relief under chapter 7 of the Bankruptcy Code on July 29, 2011. Joseph N. Callaway ("Mr. Callaway") was appointed chapter 7 trustee. Based on the testimony provided at the debtor's § 341 meeting, the trustee declared the debtor's case to be a

---

[1] The debtor, acting pro se, originally filed a motion to remove trustee based on conflict of interest on November 28, 2011. Following the December 20, 2011 hearing on that matter, the debtor filed a second motion to remove trustee on December 30, 2011, based on the trustee's alleged incompetence and unethical behavior. Because identical relief is requested in the motions, the court will now address them both.

"no asset" case. Subsequently, the debtor was discharged, and on October 31, 2011, the case was closed. However, in early October 2011, the trustee was informed that the debtor was the plaintiff in an action against Bell Partners, Inc. ("Bell Partners") in the Superior Court of Wake County, North Carolina ("the state action").[2] In the state action, the debtor alleges that she has suffered personal injuries and pecuniary damages as a result of Bell Partners' failure to transfer her to a different apartment unit in the debtor's apartment community. The debtor alleged that Bell Partners actions were discriminatory and in violation of her civil rights.

The state action and its underlying claims were not listed in the bankruptcy schedules filed by the debtor. On October 17, 2011, the debtor filed an amended schedule C, listing the state action as fully exempt; however, she never amended her schedule B to include the state action. Following the closing of the debtor's case, the court granted the trustee's motion to reopen on November 17, 2011. The trustee also filed a timely objection to the schedule C amendment, stating that any pecuniary damages recovered by the debtor should not be exempted from her estate.

The trustee, attempting to facilitate a settlement agreement that would resolve both the state action and the bankruptcy matters, entered into negotiations with counsel for Bell Partners and the debtor directly, as she was not represented by counsel. After several phone conversations and e-mails, the parties reached an agreement that obligated Bell Partners to pay $15,000.00 in full settlement of the state action. Of that amount, $10,000.00 would be distributed to the debtor as exempt funds and $5,000.00 to the trustee as non-exempt funds on

---

[2] The action is entitled <u>Wendy Dickerson v. Bell Partners, Inc. c/o The Beckanna Apartments,</u> 11-CvS-12341.

2

behalf of the bankruptcy estate.[3]  In return, the debtor agreed to release all claims against Bell Partners in the state action and to dismiss the state action with prejudice.

The debtor agreed to the terms of the settlement agreement both in telephonic communications with the trustee, and in e-mails on November 9, 2011, and again, on November 15, 2011.  On November 15, 2011, counsel for Bell Atlantic prepared a Settlement Agreement and Mutual Release ("Settlement Agreement") that memorialized the above-stated terms.  After receiving and confirming the Settlement Agreement, the trustee sent it to the debtor via e-mail.  The debtor signed it, dated it—November 16, 2011, and faxed it to the trustee.  However, later that day, the debtor sent an e-mail to the trustee and counsel for Bell Partners that indicated she no longer wanted to go forward with the settlement.  Specifically, the debtor stated that "[t]his [e-mail] voids all of my agreements, with the Bankruptcy trustee and Bell Partners."  Furthermore, the debtor stated in another e-mail to counsel for Bell Partners, "My decision to change my mind again has no bearing on Mr. Callaway what's so ever.  He was not aware that I was going to change my mind.  I apologize for changing my mind . . . ."

Demand has been made by Bell Partners that the trustee and the debtor honor their respective agreements to enter into and execute the Settlement Agreement.  The trustee is willing to do so and believes that the proposed Settlement Agreement is in the best interest of the bankruptcy estate and its creditors and that this settlement is commensurate with the costs of litigations and the chances of recovery in a trial of the state action.  Based on these facts, the trustee moved the court to compel and approve the Settlement Agreement on November 23, 2011.

---

[3] The trustee asserts that these terms constitute a fair and proper settlement of the exemption issues against the debtor.

On November 28, 2011, the debtor filed a motion to remove Mr. Callaway as trustee in her case, alleging a violation of North Carolina Rule of Professional Responsibility § 1.7(a)(1).[4] The debtor's motion was based on the fact that the trustee's law firm represented Coastal Plain Hospital in connection with an involuntary commitment petition in the Nash County District Court involving the debtor in February 2010.[5] After the district court ruled for the hospital and entered the appropriate order on February 22, 2010, the trustee's law firm had no further involvement.[6] On December 30, 2011, the debtor again filed a motion to remove Mr. Callaway as trustee in her case, this time generally alleging "unethical behavior and incompetence in representing [the debtor's] bankruptcy estate." The debtor also alleged that Mr. Callaway "knew [she] was not an attorney and was representing herself. . . . Mr. Callaway took advantage of her vulnerabilities."

## DISCUSSION

"A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." Harris v. Ray Johnson Constr. Co., 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000). "A valid contract is formed when parties 'assent to the same thing in the same sense, and their minds meet as to all terms.'" Smith v. Young Moving & Storage, Inc., 167 N.C. App. 487, 493, 606 S.E.2d 173, 177 (2004) (quoting Normile v. Miller, 313 N.C. 98, 103, 326 S.E.2d 11, 15

---

[4] This rule disallows an attorney from representing a client, "if the representation involves a concurrent conflict of interest."

[5] Proceedings of this nature are sealed by the state court. However, the debtor attached a copy of the commitment order and the notice of the hearing to her motion.

[6] It should also be noted that the debtor had independent counsel in the matter.

4

(1985)). "[T]here is no law requiring that a compromise contract . . . to be put in writing." Id. (quoting Armstrong v. Polakavetz, 191 N.C. 731, 735, 133 S.E.2d 16, 18 (1926)). Therefore, an agreement to settle a lawsuit, even if oral,[7] is fully enforceable in North Carolina so long as all parties assent.

      The trustee argues that because the debtor, Bell Partners, and the trustee consented to the terms of the Settlement Agreement, a valid, enforceable contract was formed between the three parties.[8] This is true, the trustee contends, even without the written, signed Settlement Agreement, because the debtor's consent to the specified terms was clearly established through her e-mails and phone conversations with the trustee and counsel for Bell Partners. The fact that the debtor did sign, date, and fax the memorializing Settlement Agreement only reinforces this conclusion. Therefore, the trustees requests that the court approve the compromise, thereby allowing and enforcing the terms of the Settlement Agreement.

      At the hearing, the debtor did not dispute that she had communicated with the trustee regarding the settlement negotiations and that the above-stated factual account of the communications is accurate. However, the debtor did argue that the Settlement Agreement should not be enforced. She contends that because her perceived consent to the terms of the Settlement Agreement was the product of her mental disability, a contract was never formed. The debtor contended that her disability causes her—and did cause her in this case—to act impulsively without considering or understanding the consequences of her actions. In support of

---

[7] However, in some cases not applicable here, a settlement agreement must meet the requirements of the statute of frauds. Smith v. Young Moving & Storage, Inc., 167 N.C. App. 487, 493 n.2, 606 S.E.2d 173, 177 n.2 (2004) (citations omitted).

[8] On December 16, 2011, Bell Partners filed a response in full support of the trustee's motion to compel and approve settlement and compromise.

this position, the debtor offered various medical records, which the court reviewed *in camera* to protect the debtor's privacy.

The standard in North Carolina for competency to contract has been established for over one hundred years. As the Supreme Court of North Carolina articulated in 1905:

> [A] person has mental capacity sufficient to contract if he knows what he is about and that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.

Sprinkle v. Wellborn, 140 N.C. 163, 181, 52 S.E. 666, 672 (1905) (internal citations omitted). "The party seeking to exercise the privilege of avoidance has the burden of proof on the question of [competency to contract]. Everyone is presumed to be [competent] until the contrary appears." Ridings v. Ridings, 55 N.C. App. 630, 633, 286 S.E.2d 614, 616 (1982) (citations omitted).

Based on the facts as presented and after reviewing the medical records provided by the debtor,[9] the court finds that the parties created a valid, enforceable contract. First, the debtor failed to meet the burden of showing incompetency to contract. The debtor's medical records failed to provide sufficient evidence that the debtor lacked "the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences." Sprinkle, 140 N.C. at 181, 52 S.E. at 672. Furthermore, the court finds that the time line of relevant communications supports that the debtor fully understood the terms and participated in the formulation of the Settlement Agreement. Specifically, the debtor consented via e-mail on

---

[9] To protect the debtor's privacy, the court has not specifically quoted from the debtor's medical records. However, the records are available to any court further reviewing this issue.

November 9, 2011, and then again on November 15, 2011, before finally signing and faxing the Settlement Agreement on November 16, 2011.  These correspondences display that the debtor's consent was not impulsive and that at minimum, the debtor was "in such possession of [her] faculties as to enable [her] to know at least what [s]he is doing and to contract understandingly."  Id.

Second, given that the debtor was competent to contract, the court finds that a valid, enforceable settlement agreement was created by the parties.  The e-mails show that as early as November 9, 2011, the trustee, Bell Partners, and the debtor "assent[ed] to the same thing in the same sense, and their minds [met] as to all terms.'"  Smith, 167 N.C. App. at 493, 606 S.E.2d at 177 (2004) (quoting Normile, 313 N.C. at 103, 326 S.E.2d at 15).  Furthermore, although the law does not require that a settlement agreement be memorialized in writing, see id. (quoting Armstrong, 191 N.C. at 735, 133 S.E.2d at 18 ), in this case, the debtor signed and transmitted a copy of the settlement agreement to the trustee.  Therefore, a binding and enforceable contract was created, and "[t]he fact that the plaintiff later changed her mind does not render the settlement agreement unenforceable."  Id. at 494, 606 S.E.2d at 178.

Lastly, the court finds no basis for granting the debtor's motions to remove the trustee. First, the court finds that Mr. Callaway serving as trustee in the debtor's case poses no conflict of interest.  In the February 2010 involuntary commitment action, the trustee's law firm did represent the hospital where treatment was rendered, but it was in no way associated with the petitioner in the case, and the hospital has no connection to the debtor's bankruptcy.  Second, the court finds that Mr. Callaway has performed his duties as trustee in a competent and ethical manner.  Mr. Callaway clearly and continuously instructed the debtor that he represented the

bankruptcy estate and that she should get her own counsel in regard to her claim against Bell Partners.[10]  In sum, neither motion filed by the debtor states facts sufficient to support the removal of Mr. Callaway as trustee in her case.

Based on the foregoing, the trustee's motion to compel and approve compromise is **ALLOWED**, and the debtor's motions to remove trustee are **DENIED.**

## END OF DOCUMENT

---

[10] As the debtor admitted in an e-mail on November 10, 2011, "[Y]ou made it clear that you represent the Bankruptcy Estate. . . . I will have my attorney contact you as soon as possible."